# 2003 DTA 131

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE SAN JUAN
PANEL II**

ZORAIDA ENCARNACIÓN
Apelante

v.

SAN JORGE CHILDREN'S HOSPITAL, COMPAÑIAS ASEGURADORAS X, Y Y Z
Apelado

Núm. KLAN-2003-00131

RECEIVED
DEC 1 5 2003
SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

San Juan, Puerto Rico, a 8 de agosto de 2003

Panel compuesto por su Presidenta, la Juez Rodríguez de Oronoz,
y las Juezas Peñagarícano Soler y Bajandas Vélez

Peñagarícano Soler, Jueza Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Zoraida Encarnación (en adelante, Sra. Encarnación), comparece ante nos mediante Apelación presentada el 7 de febrero de 2003. Solicita revisemos la Sentencia Parcial emitida por el Tribunal de Primera Instancia en la acción civil KPE-2001-0545 (906), notificada a las partes el 8 de enero de 2003. En ésta, el Tribunal apelado

emitió Sentencia Sumaria Parcial desestimando el caso de autos en cuanto a la alegación de discrimen por edad y despido injustificado. No obstante, declinó desestimar el caso en cuanto a la acción predicada en que no se le proveyó un acomodo razonable.

Examinados en su totalidad los autos del caso, así como el derecho aplicable, resolvemos confirmar la Sentencia Parcial apelada. Veamos.

# I

El 12 de agosto de 1968, la Sra. Encarnación comenzó labores como enfermera en el Hospital San Jorge Children's Hospital (en adelante, Hospital). El 18 de octubre de 2000, ésta fue despedida por el Hospital a causa de negligencia crasa en el desempeño de sus labores. El 14 de marzo de 2001, la Sra. Encarnación presentó *Demanda* alegando que su despido fue injustificado, discrimen por edad y discrimen por incapacidad. ■ El 17 de abril de 2001, la parte aquí apelada contestó la demanda de autos. ■

El 14 de diciembre de 2001, el Hospital presentó una moción de sentencia sumaria, esgrimiendo la ausencia de controversia sobre los hechos medulares del caso de marras. ■ El 31 de enero de 2002, la parte apelante presentó su moción en oposición a la sentencia sumaria presentada. ■ Las partes respectivamente presentaron réplica y dúplica en torno a la moción sumaria. El 2 de abril de 2002, se celebró una vista argumentativa a la cual comparecieron las partes de epígrafe. En la misma, el Tribunal de Primera Instancia atendió los argumentos en torno a los hechos esenciales incontrovertibles del caso de autos. ■ Predicado en ello, se desprende de la Sentencia apelada, que la Sra. Encarnación recibió numerosas amonestaciones escritas durante sus años de servicio por diversos motivos, entre éstas a saber:

*"1. El 5 de mayo de 1987, se le suspendió de empleo por una semana debido a que abandonó el área de 'nursery' del Hospital, antes de que llegara su relevo, descuidando así a cuatro recién nacidos; uno de ello con suero y fototerapia.* ■

*2. El 2 de octubre de 1991, se le envió un memorando por motivo del número de ausencias reflejadas en su expediente; en esta ocasión, diez (10) en el período de tres (3) meses.* ■

*3. El 12 de abril de 1993, se le indicó que se ausentó durante treinta y cuatro (34) ocasiones en el 1992, apercibiéndose que debería mejorar su asistencia.* ■

*4. El 3 de agosto de 1993, la apelante se ausentó un número de trece (13) ocasiones en el período de cinco (5) meses.* ■

*5. El 4 de mayo de 1994, nuevamente se ausentó siete (7) ocasiones en cuatro (4) meses.* ■

*6. El 28 de septiembre de 1996, se preparó un reporte para el expediente de la apelante con motivo de no haber seguido instrucciones verbales.* ■

*7. El 3 de abril de 2000, en tres (3) meses se ausentó un número de nueve (9) veces.* ■

*8. El 5 de mayo de 1999, se entrevistó a la apelante por un incidente ocurrido con el director médico de la sala de emergencias del Hospital, debido a pereza o dejadez por parte de ésta.* ■

*9. El 23 de junio de 1999, se le amonestó por no haber administrado unas órdenes médicas. La apelante no estuvo de acuerdo con este informe, y rehusó firmar el mismo.* ■

*10. El 29 de julio de 1999, se le amonestó por ausentarse veinticuatro (24) ocasiones durante seis (6)*

*meses.* ██

*11. El 9 de marzo de 2000, recibió otra amonestación escrita por pereza y no seguir instrucciones al negarse a contar narcóticos el 6 de marzo de 2000. Asimismo, se indicó que ésta se negó a asistir a un médico en un procedimiento el 7 de marzo de 2000. La Sra. Encarnación manifestó no estar conforme con el informe y así, firmó el mismo."* ██

En tanto, el 21 de julio de 2000, la Sra. Encarnación solicitó la trasladaran de Sala de Emergencias al Laboratorio del Hospital, alegando que debido a una condición del brazo, se le hacía difícil escribir durante períodos prolongados. ██

Así las cosas, el 11 de octubre de 2000, la apelante inyectó a un paciente cierto medicamento en el Hospital. Posterior a ello, se propuso a enterrar la jeringuilla en el colchón donde se encontraba el paciente. Sin embargo, enterró la misma en el muslo izquierdo de la madre del paciente en cuestión. Por este incidente, el 13 de octubre de 2000, se entrevistó a la Sra. Encarnación y se le indicó en un informe que no se tomarían medidas disciplinarias hasta que el incidente fuera evaluado por el Departamento de Recursos Humanos del Hospital. La parte apelante suscribió este informe. ██

El 18 de octubre de 2000, luego de haberse evaluado el incidente por el Departamento de Recursos Humanos, el Hospital determinó despedir a la parte apelante por negligencia crasa en el desempeño de sus deberes. El 10 de diciembre de 2002, el Tribunal de Primera Instancia emitió la *Sentencia Parcial* de autos, ██ la cual fue notificada a las partes el 8 de enero del corriente año. Mediante ésta, el Tribunal de Instancia declaró ha lugar la moción sumaria presentada por el Hospital sólo en cuanto a la alegación por despido injustificado y por discrimen por edad.

El 23 de enero de 2003, la parte apelante presentó una *Moción de Reconsideración a "Sentencia Parcial"*. ██ El 27 de enero de 2003, el foro de instancia la declaró no ha lugar. Inconforme con ello, el 7 de febrero de 2003, la parte apelante acudió ante nos mediante *Alegato de Apelación*. En el mismo, indica los siguientes señalamientos de error:

*"Erró el Tribunal de Primera Instancia al disponer del caso a través de sentencia sumaria parcial sin hacer determinaciones de credibilidad de testigos y existiendo elementos de intención y negligencia en el caso.*

*Erró el Honorable Tribunal de Primera Instancia al justificar la disposición sumaria del caso al destacar erróneamente similitudes entre el caso de autos y el de Jusino Figueroa.*

*Erró el Honorable Tribunal de Primera Instancia al determinar que la parte demandada-apelada rebatió la presunción prima facie (sic) de discrimen por edad mediante prueba robusta y convincente".*

El 10 de marzo de 2003, la parte aquí apelada presentó su *Alegato*. Contando con la comparecencia de las partes, estamos en posición de resolver la controversia ante nos. Así lo hacemos.

**II**

Atenderemos en conjunto el primer y segundo señalamiento de error.

La Regla 36.3 de las de Procedimiento Civil permite a un tribunal dictar sentencia sumaria en aquellos casos en que *"las alegaciones, [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente".* 32 L.P.R.A. Ap. III, R. 36.3.

Este mecanismo procesal es un remedio discrecional extraordinario *que se concederá solamente en casos claros en los cuales no exista una controversia real sustancial sobre hechos materiales. García Díaz v. Darex P.R. Inc.,* **99 J.T.S. 84**; *Piñero González v. A.A.A.,* 146 D.P.R. 890 (1998); *PFZ Properties, Inc. v. General Accident Insurance Co.,* 136 D.P.R. 881 (1994). Su propósito consiste en agilizar los procedimientos judiciales mediante la resolución justa y rápida de un pleito el cual se limita a la aplicación del derecho a unos hechos no controvertidos. *Pardo Santos v. Sucn. de Jorge Stella,* 145 D.P.R. 816 (1998); *PFZ Properties, Inc. v. General Accident Insurance Co., supra.*

La parte promovente tendrá que demostrar la *"inexistencia de una controversia real sobre todo hecho material pertinente que a la luz del derecho sustantivo aplicable determinaría una sentencia a su favor como cuestión de ley". Tello, Rivera v. Eastern Airlines,* 119 D.P.R. 83, 86 (1987). Además, el Tribunal debe quedar convencido de la inexistencia de controversia sobre hechos materiales y que lo que resta es aplicar el derecho. *Roig Commercial Bank v. Rosario Cirino,* 126 D.P.R. 613 (1990).

Asimismo, el Tribunal podrá dictar sentencia en contra de la parte promovente si como cuestión de derecho procede que la misma se dicte a favor del promovido. *Piñero González v. A.A.A., supra*; *PFZ Properties, Inc. v. General Accident Insurance Co., supra.* Es preciso destacar que para derrotar una moción de sentencia sumaria no basta con la presentación de meras alegaciones; la parte promovida deberá presentar documentación que sitúe en controversia los hechos aludidos por el promovente de la acción. *Audiovisual Language v. Sistema de Estacionamiento,* 144 D.P.R. 563 (1997). ▮ Véase además, *Mercado Vega v. U.P.R.,* 128 D.P.R. 273 (1991); *Tello, Rivera v. Eastern Airlines, supra.*

Como mencionáramos, la sentencia sumaria ha de ser utilizada por los tribunales sólo en aquellas instancias que por sus hechos y el derecho aplicable, lo ameriten. No existe una prohibición en torno a la utilización, de la sentencia sumaria en casos laborales, ello si de los hechos y el derecho resulta procedente. El Tribunal Supremo de Puerto Rico ha señalado que a pesar de la norma general en cuanto a no recomendarse la sentencia sumaria en casos de reclamaciones laborales, la misma no constituye una prohibición en todos los casos. Ello, pues, las circunstancias del caso en controversia habrán de determinar si esa regla de carácter general impide la disposición del mismo mediante la vía sumaria. *Jusino Figueroa v. Walgreens of San Patricio, Inc.,* **2001 J.T.S. 154**.

Habida cuenta de ello, el legislador estableció la Ley de Despido Injustificado, Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 18, con la intención de proteger al trabajador en Puerto Rico mediante una legislación que estipula sanciones al patrono que despida a un empleado sin tener causa justificada para ello. Asimismo y como es sabido, el espíritu de esta legislación es de carácter reparador y por ello se habrá de interpretar liberalmente a favor del empleado. *Belk v. Martínez,* 146 D.P.R. 215 (1998).

Así, pues, en el Artículo 2 de la Ley Núm. 80, *supra*, se enumeran de forma no taxativa, algunas de las circunstancias que pueden justificar el despido de un empleado, a saber:

*"Se entenderá por justa causa para el despido de un empleado de un establecimiento:*

*(a) Que el obrero siga un patrón de conducta impropia o desordenada.*

*(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.*

*(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento, siempre que copia escrita de los mismos se haya suministrado*

*oportunamente al empleado.*

*(d) Cierre total, temporero o parcial de las operaciones del establecimiento.*

*(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.*

*(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.*

*No se considerará despido por justa causa aquél que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento...".* 29 L.P.R.A. sec. 185b.

Al tramitarse una reclamación bajo las disposiciones de la Ley Núm. 80, *supra*, se favorece al empleado querellante mediante una presunción a favor de este. Por ello, el Art. 8 de la aludida ley establece que en la contestación a la demanda el patrono adviene obligado a alegar los hechos que propiciaron el despido, así como probar que éste fue uno justificado. 29 L.P.R.A. sec. 185k; *Belk v. Martínez, supra*. Asimismo, el Tribunal Supremo de Puerto Rico ha señalado que el citado artículo *"no favorece el despido como sanción a la primera falta...; [s]in embargo, el referido estatuto no excluye el despido por motivo de una primera o única ofensa, cuya intensidad de agravio así lo requiera, en protección de la buena marcha de la empresa y la seguridad de las personas que allí laboran....".* Almodóvar v. G.P. Industries, **2001 J.T.S. 7**, a la pág. 757.

En torno a lo que constituye una primera falta como justa causa para el despido del empleado, el Tribunal manifestó que ésta ha de ser aquélla que por su *"...gravedad y potencial daño pone en riesgo el orden, la seguridad, la eficiencia y el ambiente de trabajo, afectando de esa forma la buena marcha y funcionamiento normal de la empresa...".* Enfasis suplido. *Ibid*, a la pág. 757. Además, la ofensa ha de revelar una actitud lesiva a la paz laboral que constituiría una imprudencia el esperar su reiteración para ejecutar el despido del empleado concernido. *Srio. del Trabajo v. ITT,* 108 D.P.R. 538 (1979). Al momento de tener bajo consideración las alegaciones de despido injustificado, hay que ponderar que al patrono le asiste el derecho de evaluar su personal bajo las normas reglamentarias de la empresa. *Almodóvar v. G.P. Industries, supra.* Veamos.

De conformidad con lo admitido por la propia parte apelante, durante sus años de servicio en el Hospital, ésta confrontó problemas de ausentismo y de cumplimiento de su deber como empleada del mismo. Como cuestión de hecho, no empece la apelante acudió al Fondo del Seguro del Estado (en adelante, el Fondo), a causa de un accidente que sufriera en el año 1997 en el trabajo, ello no justifica el sinnúmero de ausencias que refleja su expediente con anterioridad a accidente alguno.

Además, no está en controversia que el incidente que dio lugar al despido de la apelante, ocurrió de la forma reseñada y en franca violación a las regulaciones médicas del Hospital. Así fue admitido por la Sra. Encarnación según el testimonio recogido en la deposición que le tomaran y que tuvo ante su consideración el foro de instancia.

El procedimiento a seguir para disponer de una jeringuilla usada, es de conocimiento general incluso por aquéllos que no son profesionales de la salud. Ciertamente, el modo correcto y seguro de disponer de una jeringuilla, no es el pretender enterrar la misma en un colchón. Ello, por evidentes e innumerables razones. Casos como el que nos ocupa, ejemplifican la seriedad que merece el apropiado manejo de desperdicios quirúrgicos, en especial cuando se está en contacto directo con pacientes y familiares.

Las jeringuillas, por razón de sus particularidades, son objetos que fácilmente pueden traspasar enfermedades a otras personas que entren en contacto con éstas. Resulta evidente que la apelante, por razón de

sus años de servicio y conocimientos del campo de la salud, tenía que conocer la peligrosidad que estos instrumentos representan para la integridad física de los pacientes en ocasión del mal manejo de los mismos. En vista de ello, es indubitado que la actuación de la apelante -la cual no ha sido controvertida por ésta-, resulta en una falta de patente intensidad que aun en ausencia del resto de las amonestaciones que colman su expediente, ameritaba sin más su despido. *Almodóvar v. G.P. Industries, supra.*

Es indubitado que ante tan trascendental falta el patrono no podía arriesgarse a una repetición del mismo. De así hacerlo, con toda probabilidad estaría apostando a su institución en una situación vulnerable a reclamaciones. Inclusive, incidentes como el que causó el despido colocan invariablemente en peligro la seguridad e integridad física de los pacientes y familiares de éstos. El despido de la apelante, tomando en consideración la gravedad del incidente que motivó el mismo, no nos parece discriminatorio o injustificado a la luz del derecho vigente en nuestra jurisdicción. Precisa reiterar que en el caso que nos ocupa, la Sra. Encarnación *enterró una jeringuilla usada en el muslo de la madre de un paciente al intentar enterrar la misma en un colchón.* Todo esto en contravención a los más básicos principios de seguridad y salubridad médica. Este hecho es neurálgico al caso de marras, e ineluctablemente evidencia lo que se considera una falta de magnitud como para conllevar el despido del empleado en cuestión.

Además, valga señalar que en adición al grave incidente con la jeringuilla, la apelante violentó el reglamento del Hospital al no informar a su supervisor sobre el incidente ocurrido a la brevedad posible. [22] No obstante, no se recomienda utilizar la sentencia sumaria en casos laborales; lo anterior no significa que el mecanismo sumario le está totalmente vedado a los tribunales en aquellas circunstancias que lo ameriten. El caso de marras presenta unos hechos medulares e incontrovertidos que justifican el despido de la apelante, y la procedencia de la sentencia sumaria parcial emitida. No se cometió el primer y segundo error señalado.

### III

Por otro lado, en cuanto al tercer error señalado, el Artículo 1 de la ley Núm. 100 de 30 de junio de 1959, establece que un patrono incurrirá en responsabilidad civil de probarse que discriminó en contra de un empleado por razón de edad, raza, color, sexo, origen social o nacional, condición social, afiliación política, ideas políticas o religiosas. Esto en cuanto a acciones relacionadas a despido, sueldo, términos, condiciones de trabajo, o dejar de emplear o clasificar al empleado de forma que limite sus oportunidades de empleo, entre otros. 29 L.P.R.A. sec. 146.

Asimismo, el Artículo 3 de la Ley Núm. 100, *supra*, instituye una presunción de discrimen a favor del empleado cuando el despido fue uno sin justa causa, disponiendo entonces, que:

"*Se presumirá que cualquiera de los actos mencionados en las secciones precedentes que fueron cometidos en violación de las secs. 146 a 151 de este título, cuando los mismos hayan sido realizados sin justa causa. Esta presunción será de carácter controvertible.*" 29 L.P.R.A. sec. 148.

Por razón de que la Ley Núm. 100 no especifica lo que ha de constituir causa justificada para el despido, el Tribunal Supremo de Puerto Rico ha acudido al Art. 2 de la Ley Núm. 80, *supra*, a los efectos de tener una referencia no taxativa de las circunstancias que son consideradas justa causa para el despido. *Almodóvar v. G.P. Industries, supra; Belk v. Martínez, supra; Soto v. Hotel Caribe Hilton*, 137 D.P.R. 294 (1994). El Tribunal Supremo de Puerto Rico ha señalado que el estatuto federal relativo al discrimen por edad (ADEA), no establece una presunción *per se* a favor del empleado, sino que jurisprudencialmente se han adoptado los requisitos que éste tendrá que probar para presentar un caso *prima facie* por discrimen. Así pues, el demandante adviene obligado a presentar prueba que demuestre: (1) que estaba dentro de las edades específicamente protegidas; (2) que fue despedido; (3) que estaba calificado para ejercer las funciones del puesto, y (4) que fue reemplazado por alguien más joven. *Ibáñez v. Molinos de P.R., Inc.*, 114 D.P.R. 42 (1983); Véanse además: *Hernández v. Trans Oceanic Life Insurance Company*, **2000 J.T.S. 125**; *Soto v. Hotel Caribe Hilton, supra.*

Así pues, conforme la presunción de discrimen contenida en el Art. 3 de la Ley Núm. 100, *supra*, *"...una vez el empleado establece las circunstancias especiales para que el juzgador pueda asumir el hecho presumido -que el despido o acción perjudicial se realizó sin justa causa-, se invierte la carga probatoria. Corresponde al patrono rebatir la presunción de discrimen. Demostrará, con preponderancia de prueba, que el despido no fue discriminatorio. Esto es, que se presentará evidencia de calidad suficiente para convencer al juzgador que la existencia del discrimen era menos probable que su inexistencia...."*. Enfasis suplido. *Belk v. Martínez, supra*, a la pág. 231.

No obstante ello, en esta etapa de los procedimientos, el patrono no está obligado a probar la causa del despido en sí. *Basta con que pruebe que la referida causa no fue una de ánimo discriminatorio. "...En otras palabras, si el patrono demuestra, a satisfacción del tribunal, que la razón discriminatoria alegada por el demandante no fue el motivo determinante para el despido, quedará rebatida la presunción. Derrotada la presunción, le corresponde al demandante presentar prueba dirigida a establecer la existencia de discrimen."* Enfasis suplido. *Belk v. Martínez, supra*, a las págs. 231-232.

Habida cuenta de ello, en el caso de marras se desprende que la parte apelante no presentó prueba que rebatiera la explicación provista por el patrono en cuanto a la causa determinante para su despido. El Tribunal Supremo de Puerto Rico ha manifestado de forma prístina, que en nuestra jurisdicción no es necesario que el patrono pronuncie de forma afirmativa una explicación razonable para el despido en cuestión. Se considerará suficiente, el que *pruebe que la razón que motivó el despido no fue una discriminatoria*; así derrotará la presunción de discrimen. *Jusino Figueroa v. Walgreens of San Patricio, Inc., supra*.

La Sra. Encarnación pertenece a la clase protegida, fue despedida y alegadamente fue sustituida por alguien más joven. ▋ Empero, el patrono en este caso logró probar que el despido de la Sra. Encarnación obedeció a razones *justas y meritorias* en vista de la falta por ésta acometida. Como dijéramos, *"...si el patrono demuestra, a satisfacción del tribunal, que la razón discriminatoria alegada por el demandante no fue el motivo determinante para el despido, quedará rebatida la presunción...."*. *Belk v. Martínez, supra*, a las págs. 231-232. Ante ello, el empleado tiene que rebatir la prueba del patrono demostrando así la existencia de ánimo discriminatorio en su despido. No lo hizo.

En conclusión, de la prueba incontrovertida que tuvo ante sí el foro apelado surge que la apelante no descargó efectivamente la prueba necesaria para probar un caso por discrimen por edad, ni controvirtió los hechos medulares del mismo. No se cometió el tercer error señalado.

**IV**

Por los fundamentos anteriormente expresados, se confirma la *Sentencia Parcial* de autos.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2003 DTA 131**

1. Véase, folio núm. 1 en Apéndice de autos.

2. Véase, *Contestación a Demanda*, folio núm. 5 en Apéndice de autos.

3. Véase, *Moción de Sentencia Sumaria*, folio núm. 9 en Apéndice de autos.

4. Véase, *Oposición a Moción de Sentencia Sumaria*, folio núm. 78 en Apéndice de autos.

**5.** Véase, *Minuta*, folio núm. 1 en Apéndice de *Alegato* de parte apelada.

**6.** Véase, folios núms. 37 y 38 en Apéndice de autos.

**7.** Véase, folio núm. 23 en Apéndice de autos.

**8.** Véase, folio núm. 31 en Apéndice de autos.

**9.** Véase, folio núm. 32 en Apéndice de autos.

**10.** Véase, folio núm. 33 en Apéndice de autos.

**11.** Véase, folio núm. 41 en Apéndice de autos.

**12.** Véase, folio núm. 36 en Apéndice de autos.

**13.** Véase, folio núm. 42 en Apéndice de autos.

**14.** Véase, folio núm. 46 en Apéndice de autos.

**15.** Véase, folio núm. 35 en Apéndice de autos.

**16.** Véase, folio núm. 51 en Apéndice de autos.

**17.** Véase, folio núm. 59 en Apéndice de autos.

**18.** Véase, folio núm. 57 en Apéndice de autos.

**19.** Véase, folio núm. 159 en Apéndice de autos.

**20.** Véase, folio núm. 171 en Apéndice de autos.

**21.** No obstante, el hecho de no presentar los referidos documentos no implica que de forma automática proceda la sentencia sumaria, pues ésta sólo deberá dictarse en casos claros. Además, cualquier duda sobre si un hecho ha sido o no contradicho, deberá resolverse en contra del promovente.

**22.** Véase al respecto, *Declaración Jurada* de la Sra. Encarnación, inciso cinco (5), folio núm. 141 en Apéndice de autos.

**23.** Del análisis ponderado al caso de autos, se colige que ésta no logró señalar quién fue reclutado en su lugar, así como tampoco la edad de la persona que alegadamente le sustituyó. Véase, *Deposición* de la Sra. Encarnación en su pág. 47, folio núm. 6 en Apéndice de *Alegato* de parte apelada.